**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION** | : | |
| **Plaintiff** | : | |
| **v.** | : | **NO. 3:CV-96-0705** |
| **LAZARE INDUSTRIES, INC. and RICHARD J. HARLEY** | : | **(JUDGE VANASKIE)** |
| **Defendants** | : | |
| **and** | : | |
| **JACQUELINE KUBE** | : | |
| **Relief Defendant** | : | |

**O R D E R**

**September 26, 2007**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

On April 22, 1996, the Securities and Exchange Commission ("SEC") brought this action, alleging that Defendants Lazare Industries, Inc. ("Lazare") and Richard J. Harley had engaged in a scheme to defraud more than seventy investors by making fraudulent representations and omissions in connection with an offer and sale of more than $1 million of Lazare common stock. The Complaint further alleged that relief defendant Jacqueline Kube

had improperly converted investor funds for her personal use. The fraudulent scheme concerned defendant Harley's efforts to market ozone therapy by rectal insufflation and other means as a treatment modality for cancer, AIDS, and other serious maladies.

On April 25, 1996, this Court, acting ex parte, issued an Order temporarily freezing Defendants' assets, requiring that they account for investor funds, and establishing an expedited discovery schedule. On May 1, 1996, the SEC attempted to depose both Harley and Kube in preparation for a preliminary injunction hearing, but each invoked the Fifth Amendment privilege against self-incrimination.

On May 16, 1996, Harley, Kube, and Lazare, acting upon the advice of counsel, agreed to a "Permanent Injunction by Consent and Continued Asset Freeze." On May 20, 1996, the consent Order was issued. Among other things, the Order restrained Defendants from violating the federal securities laws, enjoined Defendants from seeking protection under the bankruptcy laws, and restrained Defendants from disposing, transferring, pledging, encumbering, assigning, dissipating, concealing, or otherwise disposing of any funds or assets. The Order further provided that "the sole remaining issue in this action shall be whether the defendants and relief defendant must disgorge funds, the amount of disgorgement, if any, and whether civil penalties, if any, should be assessed against the defendants." (Dkt. Entry 19 at 5.)

On November 12, 1996, a multi-count indictment was returned against Lazare, Harley and Kube, charging violations of criminal law for the same conduct that formed the predicate for

this SEC civil enforcement action. As a consequence of the commencement of criminal proceedings, litigation in this action was stayed by Order entered on January 23, 1997.

The criminal proceedings were protracted. Defendants filed a number of motions, including a motion to suppress evidence seized from the personal residence occupied by Defendants Harley and Kube. The government conceded that it had erroneously attached to the search warrant application for the residence an affidavit that pertained to Defendants' business premises. In a Memorandum and Order entered on April 3, 1998, this Court concluded that the warrant issued for the search of the Harley/Kube residence was not supported by probable cause and that the good faith exception recognized in United States v. Leon, 468 U.S. 897 (1984), did not apply. Accordingly, the motion to suppress was granted.

Of course, the suppression ruling did not terminate the criminal prosecution. An evidentiary hearing was held on May 8, 1998, for the purpose of determining what evidence had not been derived from the search of the residence. The case proceeded to a jury trial in late May of 1998. After several days of deliberations, the jury reported that it was deadlocked, and a mistrial was declared. A second trial was held in May of 2000, resulting in the convictions of Harley, Kube, and Lazare.

A sentencing hearing was conducted on March 30, 2001. Harley had objected to the calculation of loss, asserting that stock subscription agreements taken from his residence had been used to tabulate the amount. Based upon the evidence presented by the government at

the sentencing hearing, this Court determined that the government had established an independent source for the stock subscription agreements used in the loss calculation. Specifically, the evidence showed that a disgruntled former employee and investor, Dawn Loikits, had provided the stock subscription agreements to an SEC staff attorney. (Transcript of March 30, 2001 Sentencing Hearing in United States v. Harley, 96-CR-286, at 19;[1] Declaration of John J. Heffernan, submitted as Exhibit "B" to the SEC brief in Opposition to Defendants' Motion to Vacate, Dkt. Entry 101-5.) Harley received a five year prison term, to be followed by a supervised release period of two years.

In August of 2002, the Court of Appeals for the Third Circuit affirmed the convictions and sentences of Harley and Kube. The Supreme Court denied Harley's petition for a writ of certiorari in February of 2003.

The criminal proceedings having been completed, the SEC, in November of 2004, moved to lift the stay of litigation in this matter. In the brief supporting its motion, the SEC asserted that Defendants had transferred and encumbered property in violation of the Asset Freeze Order. (Brief in Support of Motion to Lift Stay, Dkt. Entry 70, at 5.) By Order dated September 26, 2005, this Court granted the Motion to Lift the Stay. (Dkt. Entry 74.)

On January 27, 2006, the SEC moved for an Order to show cause why Harley and Kube

---

[1] Excerpts of the sentencing transcript are included as Exhibit "A" to the SEC Brief in Opposition to Defendants' Motion to Vacate, Dkt. Entry 101-4.

should not be held in contempt of the May 20, 1996 "Permanent Injunction by Consent and Continued Asset Freeze." (Dkt. Entry 79.) By Order dated February 3, 2006, Harley and Kube were directed to appear in Court to show cause why they should not be held in contempt for violating the May 20, 1996 Asset Freeze Order. (Dkt. Entry 84.) They were also directed to provide the SEC with a sworn accounting of all assets that were subject to the May 20, 1996 Asset Freeze Order. (Id.) Finally, the Order authorized expedited discovery. (Id.)

Harley and Kube failed to comply with the February 3, 2006 Order. Instead, on March 2, 2006, one day before the scheduled hearing date on the show cause order, they moved to dismiss this matter on the grounds that it rested upon evidence illegally seized from their residence. Concluding that Defendants could not collaterally challenge the validity of the Asset Freeze Order in a contempt proceeding (Transcript of March 3, 2006 Hearing, Dkt. Entry 90, at 7-8), this Court denied the motion to dismiss.

By Order dated March 13, 2006, this Court found Harley and Kube in civil contempt of the Asset Freeze Order. To purge this contempt, Harley and Kube were directed to pay $108,000 plus prejudgment interest in the amount of $23,732 into the Registry of this Court. In addition, Harley and Kube were directed to make a full and complete sworn accounting of all assets that were ever subject to the May 20, 1996 Asset Freeze Order. Harley and Kube did not comply with the March 13, 2006 Order.

Instead, on April 14, 2006, they moved to vacate the 1996 Asset Freeze Order and the

2006 Civil Contempt Order. (Dkt. Entry 99). This motion was once again premised upon the assertion that the civil enforcement proceeding rested upon documents obtained as a result of the illegal search of their residence.[2]

Defendants argue that the Asset Freeze Order as well as the Civil Contempt Order must be set aside on the grounds that this Court lacked jurisdiction because the SEC civil enforcement proceeding rested upon illegally seized documents. Defendants' arguments are legally and factually fallacious.

Subject matter jurisdiction is a matter of congressional action. Exercise of subject matter jurisdiction is not dependant upon the source of evidence used by a party. In this case, there is no dispute that Congress has conferred subject matter jurisdiction on federal courts to entertain civil enforcement proceedings brought by the SEC. See 15 U.S.C. §77v; 15 U.S.C. §78aa. These statutes provide that District Courts have jurisdiction over all suits in equity and actions at law brought to enforce any liability or duty created by the Securities Act of 1933, 15 U.S.C. §§ 77a, et seq., and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, et seq., respectively. Jurisdiction, i.e., the authority to act, is not affected by the admissibility vel non of certain evidence.

In this case, Defendants, with the assistance of counsel, agreed to an Asset Freeze

[2]Defendants also had appealed the denial of their motion to dismiss the show cause order. On December 6, 2006, the Court of Appeals for the Third Circuit dismissed the appeal due to Defendants failure to timely prosecute the matter.

Order. That Order has remained in full force and effect since its entry in May of 1996. The suppression ruling upon which Defendants now rely was entered in April of 1998. Although a stay of litigation was then in effect, the Asset Freeze Order remained in place. If Defendants wanted to avoid the constraints of the Asset Freeze Order, they could have moved to lift the stay of litigation. In this regard, the stay order provided that it may be vacated upon good cause shown. Defendants did not seek to challenge the validity of the Asset Freeze Order, but did proceed to violate it. They acted at their peril in transferring and encumbering assets subject to an Order of this Court

Defendants may not collaterally challenge the validity of the order to which they assented. As stated in Maggio v. Zeitz, 333 U.S. 56, 69 (1948):

> It would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience.

Simply stated, "the validity of [an] Order is not open to collateral attack in a contempt proceeding for violating it." Harris v. City of Phila., 47 F.3d 1333, 1337 (3d Cir. 1995).

Defendants lament that they did not have knowledge of grounds upon which to contest the SEC's use of stock subscription agreements. That fact, however, is of no consequence. The pertinent fact is that they agreed to be bound by the Asset Freeze Order, and they cannot evade the effect of that Order by asserting that some evidence was later found to be

excludable.

Indeed, it is doubtful that the exclusionary rule would even apply in this civil enforcement proceeding. In this regard, "the Supreme Court has never applied the exclusionary rule to exclude evidence from a civil proceeding, federal or state." SEC. v. Tyler, No. Civ. A. 3:02-CV-0282, 2002 WL 32538418, at *7 (N.D. Tex. Feb. 21, 2002). In United States v. Janis, 428 U.S. 433 (1976) the Court declined to apply the exclusionary rule in a civil action to enforce federal tax laws. In INS v. Lopez-Mendoza, 468 U.S. 1032 (1984), the Court ruled that the exclusionary rule does not apply in civil deportation proceedings. In Tyler, the district court relied upon the absence of any Supreme Court precedent applying the exclusionary rule in civil proceedings to rule that an argument similar to that presented here – illegally seized evidence had been used by the SEC – did not undermine the SEC application for preliminary injunctive relief. Similarly, the argument advanced here does not undermine the action taken by the SEC to enforce a consent Order.

In any event, the SEC demonstrated an independent source for the stock subscription agreements. The affidavit of John J. Heffernan attests to the fact that he received the stock subscription agreements from Dawn E. Loikits, a former employee of Lazare. He further attests that the stock subscription agreements obtained from Ms. Loikits were attached as Exhibit G to the Declaration of Paul F. Boeggeman, which accompanied the SEC Motion for Temporary Restraining Order, Asset Freeze and Other Relief filed in this matter on April 22, 1996.

Moreover, the SEC has pointed to testimony of Ms. Loikits given in the criminal proceeding on May 8, 1998, in which she testified that she took the Lazare stock subscription agreements and provided them to the SEC. (Exhibit "E" to the Brief in Opposition to the Motion to Vacate Order, Transcript of May 8, 1998 Hearing at 172, Dkt. Entry. 101-8 at 173.) The SEC also makes the pertinent observation that this Court found that the documents submitted in support of the civil enforcement proceeding had a source independent of the illegal search of the Harley/Kube residence when those documents were used to calculate the loss sustained as a result of Defendants' fraud. The documents used to calculate the loss included the assailed stock subscription agreements.

It is therefore clear that there is neither a factual nor a legal basis for setting aside the Asset Freeze Order or the ensuing Contempt Order. **ACCORDINGLY, IT IS HEREBY ORDERED THAT** Defendants' Motion to Vacate (Dkt. Entry 99) is **DENIED.**

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge